# United States Court of Appeals for the Federal Circuit

---

**HAFCO FOUNDRY AND MACHINE COMPANY, INCORPORATED,**
*Plaintiff-Appellee*

**v.**

**GMS MINE REPAIR AND MAINTENANCE, INC.,**
*Defendant-Appellant*

---

2018-1904

---

Appeal from the United States District Court for the Southern District of West Virginia in No. 1:15-cv-16143, Senior Judge David A. Faber.

---

Decided: March 16, 2020

---

ANDREW G. FUSCO, Bowles Rice, LLP, Morgantown, WV, argued for plaintiff-appellee. Also represented by JEFFREY A. RAY.

JAMES R. LAWRENCE, III, Michael Best & Friedrich, Raleigh, NC, argued for defendant-appellant. Also represented by ANTHONY J. BILLER.

---

Before NEWMAN, CHEN, and STOLL, *Circuit Judges.*

Opinion of the court filed PER CURIAM.

Opinion concurring in part, dissenting in part filed by *Circuit Judge* NEWMAN.

PER CURIAM.

Hafco Foundry and Machine Company, Inc. ("Hafco") is the owner of United States Design Patent No. D681,684 ("the '684 patent"), issued on May 7, 2013 for a "Rock Dust Blower." This device is used to distribute rock dust in areas such as coal mines, where rock dust is applied to the mine's interior surfaces, to control the explosive hazards of coal dust. Hafco developed and manufactured this device, and in April 2014 contracted with Pioneer Conveyer LLC, an affiliate of GMS Mine Repair and Maintenance, Inc. (together "GMS"), whereby GMS would serve as distributor of Hafco's rock dust blower for sale to mining customers. In May 2015 Hafco terminated this arrangement, stating that performance was poor. GMS then produced a rock dust blower for sale to mining customers.

Hafco sued GMS for infringement of the '684 patent. Trial was to a jury. GMS filed a pre-trial motion for patent invalidity, and the district court found that GMS had not presented any evidence that might establish invalidity. The jury then found GMS liable for willful infringement, and awarded damages of $123,650. The district court entered judgment on the verdict.

Both parties filed post-trial motions. On Hafco's motion the court entered a permanent injunction against infringement. On GMS' motion the district court remitted the damages award to zero, as not in accordance with the law of patent damages. The court offered a new trial on damages, and stayed the new trial pending this appeal.[1]

---

[1]    *Hafco Foundry & Mach. Co. v. GMS Mine Repair & Maint., Inc.*, Civ. No. 1:15-16143, 2018 WL 1582728, at

GMS raises two issues on appeal: whether it is entitled to judgment as a matter of law on the issue of infringement; and, in the alternative, whether it is entitled to a new trial on the issue of infringement due to errors of law in the jury instruction. Hafco did not cross appeal on any issue relating to damages.

We affirm the judgment of infringement and the district court's denial of GMS' request for a new trial, the only two issues raised by GMS on appeal. We remand to the district court for further proceedings consistent with this opinion, including any proceedings necessary for a final judgment on damages.

**Standards of Review**

We review the denial of a motion for judgment as a matter of law ("JMOL") under the law of the regional circuit where the appeal from the district court would normally lie. *Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 973 (Fed. Cir. 2010). In the Fourth Circuit, the district court's ruling on a motion for JMOL receives plenary review. *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 457 (4th Cir. 2002). The "decision to grant or deny a new trial is within the sound discretion of the district court, and we respect that determination absent an abuse of discretion." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998).

On review of the jury's factual findings, the evidence is viewed in the light most favorable to the jury's verdict. *Dotson v. Pfizer*, 558 F.3d 284, 292 (4th Cir. 2009). The

---

*8–12 (S.D. W. Va. Mar. 30, 2018) ("Dist. Ct. Op."); *id.*, 2018 WL 1733986 (S.D. W. Va. Apr. 10, 2018) ("Dist. Ct. Order"); *id.*, 2018 WL 1786588 (S.D. W. Va. Apr. 12, 2018) ("Amended Order"); *id.*, 2018 WL 3150353 (S.D. W. Va. June 26, 2018) ("Recon. Op.").

Fourth Circuit, in which this trial was held, "accord[s] the utmost respect to jury verdicts and tread[s] gingerly in reviewing them." *Lack v. Wal-Mart Stores*, Inc., 240 F.3d 255, 259 (4th Cir. 2001); *Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir. 1996). *See United States v. Foster*, 507 F.3d 233, 244 (4th Cir. 2007) ("A jury's verdict must be upheld on appeal if there is substantial evidence in the record to support it.").

I

## THE '684 PATENT

The '684 patent claims a design for a rock dust blower, as shown in the drawings: Figure 1 is a side view of the device, Figure 4 is a top view of the lid, and Figure 5 is a bottom view of the connector and stand:



FIG. 1        FIG. 4        FIG. 5

GMS filed a pre-trial motion challenging patent validity on the ground that the '684 patent is not a proper design patent because all the elements of the device are functional. GMS alternatively argued that the claim of the '684 patent should be construed to exclude all functional

elements of the claimed design.  The district court denied the motion.

In its proposed jury instructions, GMS included an instruction that stated "[w]here a design contains both functional and non-functional elements, a design patent protects only the non-functional aspects of the design as shown in the patent drawings, if there are any such non-functional aspects."  This instruction was not included in the final jury instructions, and GMS neither objected to the jury instructions nor presented evidence on the functional aspects of the '684 patent at trial.

In its post-trial motion, GMS argued that the design of its rock dust blower is plainly dissimilar to the claimed design, that there were errors of law in the jury instructions, and that it was unfairly prejudiced by its inability to introduce evidence of invalidity at trial.  The district court ruled that substantial evidence supported the jury verdict of infringement, that the jury instructions were proper, and that it had not in fact precluded GMS from arguing invalidity at trial.  Specifically, the district court stated that "If GMS wanted to argue the invalidity of the patent to the jury, it needed to offer evidence on this point.  The court did not prohibit GMS from doing so."  Dist. Ct. Op. at 21.  GMS did not argue that the functional aspects of the claimed design should have been excluded from the infringement analysis, or that it was prevented from making this argument at trial.

On appeal, GMS argues for the first time that, when certain functional and prior art aspects of the '684 patent are excluded, the design of its rock dust blower does not infringe the claimed design of the '684 patent as a matter of law.  GMS does not challenge on appeal the district court's invalidity or claim construction rulings.  Because GMS never made this non-infringement argument at the district court, nor presented relevant evidence on the

functional or prior art aspects of the '684 patent to the jury, GMS has not preserved this argument for appeal.

GMS also argues that the jury instructions adopted by the district court were plainly erroneous, warranting a new trial. We address these arguments below.

## II

### JURY INSTRUCTIONS

A model of the accused GMS blower was provided at trial, and GMS presents pictures comparing the Figures in the '684 patent with photographs of the GMS rock dust blower; including:



| The '684 Patent | GMS' Accused Rock Dust Blower |
|---|---|
| FIG. 2 | |

GMS Br. 21; J.A. 1151 (photograph of GMS rock dust blower exhibited at trial).

The jury was instructed on the criteria for infringement, including the following instructions:

Infringement - Generally

Patent law gives the owner of a valid patent the right to exclude others from making, using, offering to sell or selling the patented design within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Here, Hafco alleges that GMS' rock dust blower infringes the '684 design patent.

You have heard evidence about both Hafco's commercial rock dust blower and GMS' accused rock dust blower. However, in deciding the issue of infringement, you may not compare GMS' rock dust blower to Hafco's commercial rock dust blower. Rather, you must only compare GMS' accused rock dust blower to the '684 design patent when making your decision regarding infringement.

Direct Infringement

To determine infringement, you must compare the overall appearances of GMS' accused design to the design claimed in the Hafco '684 Patent. If you find that, by a preponderance of evidence, the overall appearance of GMS' accused rock dust blower is substantially the same as the overall appearance of Hafco's claimed design, then you must find that the accused design infringes the Hafco '684 design patent.

Two designs are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive such an observer, inducing him to purchase one supposing it to be the other. An ordinary observer is a person who buys and uses the product at issue. You do not

need, however, to find that any purchasers actually were deceived or confused by the appearance of the GMS rock dust blower.

In conducting this analysis, keep in mind that minor differences between the patented and accused designs should not prevent a finding of infringement. In weighing your decision, you should consider any perceived similarities or differences.

When evaluating designs, be it the claimed design, accused design, or prior art designs, you should always focus on the overall appearance of the design, and not individual features.

While these guidelines may be helpful to your analysis, please keep in mind that the sole test for infringement is whether you believe that the overall appearance of the accused GMS rock dust blower design is substantially the same as the overall appearance of Hafco's '684 design patent. If you find by a preponderance of the evidence that GMS' accused rock dust blower is substantially the same as the '684 design patent, then you must find that the accused GMS product infringes the Hafco '684 design patent.

Jury instructions, J.A. 484–88. GMS states that the jury instructions are flawed in two respects: first, that the instructions "incompletely and prejudicially abridg[ed] the *Gorham* test," referring to *Gorham Co. v. White*, 81 U.S. 511, 528 (1871). Dist. Ct. Op. at 19 (quoting GMS' Motion for JMOL). Second, GMS states that the jury should have been instructed "that the hypothetical ordinary purchaser is to view the patented and accused designs 'in the context of the prior art.'" GMS Br. 32.

To challenge a jury instruction, it must be established that "(1) the district court erred; (2) the error is plain; '(3) the error affects substantial rights; and (4) . . . the error

seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 912 F.3d 731, 738 (4th Cir. 2019) (citing *Gregg v. Ham*, 678 F.3d 333, 338 (4th Cir. 2012)).    Objection to the presence or absence of an instruction must be timely raised during the trial proceeding, and the correct instruction offered and rejected.  The Federal Rules of Civil Procedure provide:

> Rule 51(d)(1).  A party may assign as error: (A) an error in an instruction actually given, if that party properly objected; or (B) a failure to give an instruction, if that party properly requested it and—unless the court rejected the request in a definitive ruling on the record—also properly objected.

*See Bunn v. Oldendorff Carriers GmbH & Co. KG*, 723 F.3d 454, 468–69 (4th Cir. 2013) (A party "fail[s] to preserve a challenge to the jury instructions" when it "has provided no record of an objection to the district court").  The Rules also provide that a court may consider a plain error in the instructions that has not been preserved if the error affects substantial rights.  Fed. R. Civ. P. 51(d)(2).

GMS concedes that it "does not contend it made a proper objection to the district court's jury instructions at trial."  GMS Br. 30.  However, GMS states that since the instructions were incorrect in law, GMS is entitled to a new trial, citing Rule 51(d)(2).  The Fourth Circuit explained in *Bunn* that "[e]ven if a jury was erroneously instructed, however, we will not set aside a resulting verdict unless the erroneous instruction *seriously* prejudiced the challenging party's case."  *Bunn*, 723 F.3d at 468 (emphasis in original) (citing *Coll. Loan Corp. v. SLM Corp.,* 396 F.3d 588, 595 (4th Cir. 2005)).

GMS first assigns error to the jury instructions on the "ordinary observer":

### *1. The Ordinary Observer*

Infringement of a design patent is determined from the viewpoint of the ordinary observer, comparing the patented design with the article's overall appearance. *Gorham*, 81 U.S. at 528 ("[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.").

The jury instructions define the ordinary observer as "a person who buys and uses the product at issue." J.A. 485. GMS made no objection to this definition. Although GMS now argues that "GMS' rights were substantially affected by the district court's failure to include a complete description of the ordinary purchaser," GMS Br. 33, we are not directed to any request for such instruction or any explanation of the purported flaw.

> GMS also states that the jury should have been instructed that "small differences between the accused and the claimed design" will avoid infringement. GMS Br. 32–33. Such an instruction was not requested at the trial. Nor would it have been correct, for the patented and accused designs need not be identical in order for design patent infringement to be found. *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820 (Fed. Cir. 1992). The controlling inquiry is how the ordinary observer would perceive the article. *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997); *see also Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2002) *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (competing designs can be substantially similar despite minor differences).

The jury was correctly instructed that the question is how the ordinary oberver would view the article as a whole. *See Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) ("Differences [between the claimed design and accused design] must be evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation."); *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006) (an element-by-element comparison, without consideration of the ordinary observer inquiry to the overall design, is procedural error). GMS has failed to establish that there was any error in the jury instructions on the "ordinary observer," much less plain error warranting a new trial.

### 2. *Differences From the Prior Art*

GMS states that the jury should have been instructed to "familiarize yourself with each of the prior art designs that have been brought to your attention," citing the IPO Model Design Patent Jury Instructions at 25 (2010). GMS Br. 35–36. Hafco responds that GMS presented "not . . . even a scintilla" of prior art to the jury. Hafco Br. 3. GMS does not state otherwise, arguing only that a 55-gallon drum is a standard size.

Although GMS states that "[a] properly instructed jury would have been drawn to the same things an ordinary observer would be drawn to—namely the 'aspects of the claimed design that differ from the prior art,'" GMS Br. 18 (citing *Egyptian Goddess*, 543 F.3d at 676), the record shows no presentation of prior art, and Hafco states that GMS "never submitted a jury instruction regarding same." Hafco Br. 3. GMS does not state otherwise.

Given that there was no prior art introduced at trial, no attempt by GMS to introduce the prior art, and no proposed jury instruction on this issue, the purported exclusion of this instruction cannot be error. Accordingly, GMS has not demonstrated that a new trial is warranted.

CONCLUSION

The district court's judgment is affirmed.

**AFFIRMED AND REMANDED**

# United States Court of Appeals
# for the Federal Circuit

---

**HAFCO FOUNDRY AND MACHINE COMPANY,
INCORPORATED,**
*Plaintiff-Appellee*

**v.**

**GMS MINE REPAIR AND MAINTENANCE, INC.,**
*Defendant-Appellant*

---

2018-1904

---

Appeal from the United States District Court for the Southern District of West Virginia in No. 1:15-cv-16143, Senior Judge David A. Faber.

---

NEWMAN, *Circuit Judge*, concurring in part, dissenting in part.

I concur in the court's decision.  I write separately because I would resolve the matter of damages, for when the facts are not disputed the jury's application of incorrect law is subject to correction by the court, particularly when such correction implements the jury's intent.  I would accept Hafco's proposed remittitur to $110,000, on undisputed application of the correct law.

### *The measure of damages*

The jury awarded damages of $123,650, measured by GMS's infringing sales.  Hafco's lost profits were $110,000.

These facts were attested at the trial, and are not disputed. The jury was correctly instructed on the law of patent damages; the instructions included:

> A plaintiff in a design patent case can elect to prove either actual damages, known as compensatory damages, or it may elect to prove the amount of defendant's profits from the sale of the infringing product as its measure of recovery. With respect to actual damages, if you believe GMS infringed the '684 Patent, Hafco is entitled to receive damages adequate to compensate it for infringement beginning on April 20, 2015 to the present. Those damages can be in the form of lost profits or a reasonable royalty. The term lost profits means any and all actual reduction in business profits Hafco suffered as the result of GMS' infringement of the '684 Patent. . . .

> In this case, Hafco seeks to recover lost profits resulting from GMS' infringement of the '684 Patent. If you conclude that Hafco has proved that it lost profits because of GMS' infringement, the lost profits you award should be the amount that Hafco would have made on any sales that Hafco lost because of the infringement.

J.A. 487–489. These instructions were not challenged at trial, and are not challenged on appeal.

The district court agreed with GMS, on post-trial motion, that the $123,650 jury damages award does not "under any conceivable view of the evidence" represent Hafco's lost profits. *Hafco Foundry & Mach. Co. v. GMS Mine Repair & Maint., Inc.*, Civ. No. 1:15 -16143, 2018 WL 1582728, at \*8 (S.D. W.Va. Mar. 30, 2018) ("Dist. Ct. Op."). All parties agree that the correct standard is Hafco's lost profits. The district court remitted the damages to zero, and offered a new trial on damages. Hafco argues that "any

remittitur of the damage award should have been to an amount no less than $110,000.00," Hafco Br. 1–2.

Jury damages awards, unless clearly unreasonable or based on error in the jury instructions, are not readily modified. *See Fox v. Gen. Motors Corp.*, 247 F.3d 169, 180 (4th Cir. 2001) ("A jury's award of damages stands unless it is grossly excessive or shocking to the conscience.") (quotation omitted). Hafco offers some theories why the jury could have measured damages by GMS' sales, for the jury was not told that this evidence was irrelevant.

Hafco acknowledges that the jury instructions limited damages to Hafco's lost profits. The district court correctly so observed. However, Hafco suggests that remittitur to Hafco's lost profits of $110,000 would be a more reasonable action than remittitur to zero, for $110,000 reasonably implements the jury's verdict and intent. *See Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1371 (Fed. Cir. 2008) ("[W]here a portion of a verdict is for an identifiable amount that is not permitted by law, the court may simply modify the jury's verdict to that extent and enter judgment for the correct amount." (quoting *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1330 (11th Cir. 1999) (citing *N.Y., L.E. & W.R. Co. v. Estill,* 147 U.S. 591 (1893)))).

I would simply correct the district court's judgment, and remit the damages award to the undisputed amount of $110,000. A new trial, on undisputed facts, is not needed to serve the purposes of the jury verdict.

### *Post-Trial Motions*

In view of this expected appeal, the district court denied without prejudice Hafco's motions for enhanced damages, attorney fees, and interest. Enhanced damages and attorney fees now await resolution on remand. However, Federal Rule of Appellate Procedure 37(b) requires the appellate tribunal to determine post-judgment interest. *See Tronzo v. Biomet, Inc.*, 318 F.3d 1378, 1381 (Fed. Cir. 2003)

4      HAFCO FOUNDRY AND MACHINE CO. v. GMS MINE REPAIR

("[T]he responsibility and authority for [determining whether a party to an appeal is entitled to post-judgment interest] is assigned to the appellate tribunal."). On the remittitur that I recommend, this aspect would require our attention.